# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
#### No. 5:15-cv-00349-FL

| | |
|---|---|
| **ISAAC BRENNAN HORTON IV AND OMEZE NWANKWO,**<br>      **PLAINTIFFS,**<br><br>**v.**<br><br>**THE CITY OF RALEIGH, R.J. PIKE, JOHN DOE I, JOHN DOE II, and JOHN DOE III,**<br>      **DEFENDANTS.** | **FIRST AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiffs Isaac Brennan Horton IV and Omeze Nwankwo (collectively the "Plaintiffs") for their complaint against Defendants City of Raleigh ("Raleigh"), R.J. Pike ("Detective Pike"), John Doe I, John Doe II, and John Doe III, allege as follows:

### SUMMARY

1.     Plaintiffs seek compensatory and punitive damages and other relief arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution and under North Carolina law to redress Defendants' unlawful and unconstitutional conduct. Defendants' actions constituted false arrest and excessive and unlawful force in violation of Plaintiffs' right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures and in violation of North Carolina law. Plaintiffs should be awarded compensatory and punitive damages, along with other relief, for these violations of their constitutional rights and of state law.

1

## PARTIES

2.       Plaintiff Isaac Brennan Horton IV ("Mr. Horton") is a citizen and resident of Wake County, North Carolina.

3.       Plaintiff Omeze Nwankwo ("Mr. Nwankwo") is a citizen and resident of Wake County, North Carolina.

4.       Defendant City of Raleigh ("Raleigh") is and was at all times relevant to this action a municipal entity created and authorized under the laws of the State of North Carolina.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Raleigh assumes the risks incidental to the maintenance of a police force and the employment of police officers.  Raleigh was at all times relevant the public employer of Detective R. J. Pike and police officers John Doe I, John Doe II, John Doe III and others.

5.       Raleigh authorizes its police officers to investigate crime, interview and interrogate suspects, transport suspects, and use force when necessary and appropriate.

6.       Upon information and belief, Raleigh has purchased one or more policies of insurance that provide coverage for liability incurred by Raleigh as the result of actions or omissions committed by its police officers in the line of duty.

7.       Upon information and belief, Defendant R. J. Pike ("Detective Pike") is a citizen and resident of Wake County.  At all times relevant to this action, Detective Pike was a Detective with the Raleigh Police Department and an employee of the City of Raleigh and was acting under color of State law and pursuant to his authority as a police officer.  He is sued individually and in his official capacity.

2

8.     Upon information and belief, John Doe I, John Doe II, John Doe III and others were at all times relevant to this action officers with the Raleigh Police Department and employees of the City of Raleigh and were acting under color of State law and pursuant to their authority as police officers.  They are sued individually and in their official capacity.

9.     Upon information and belief, the actions of the individual Defendants constitute the official policy and custom of the Raleigh Police Department, and thereby of Raleigh, and were part of a pattern of conduct in violation of citizens' constitutional rights.

10.     Raleigh is sued under 42 U.S.C. § 1983 for engaging in a pattern or practice of allowing the officers of the Raleigh Police Department to use excessive force and for failing to properly train the officers of the Raleigh Police Department in the use of force and the proper use of restraints. With respect to Plaintiffs' state-law claims, Raleigh is sued under the doctrine of *respondeat superior*, since the individual Defendants were acting in the course and scope of their official duties as police officers employed by Raleigh and as agents of Raleigh when they engaged in actions alleged in this Complaint.

**JURISDICTION AND VENUE**

11.     This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution. This case also arises under the provisions of 42 U.S.C. §§ 1983 and 1988.

12.     Original jurisdiction over this case is conferred upon this Court pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the United States Constitution because this case arises under the Constitution and laws of the United States. Original jurisdiction over this case is also conferred upon this Court pursuant to 28 U.S.C. § 1343(a) because this action is to redress the

3

deprivation by Defendants, under color of state law, of rights, privileges, and immunities granted to Plaintiffs by the United States Constitution.

13.     This Court has pendent jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1393(a). The Plaintiffs and one or more Defendants reside in this District, and most of the key events at issue occurred in this judicial district.

## FACTS

### *Mr. Nwankwo is arrested without probable cause*

15.     On the evening of July 11, 2014 Mr. Horton and Mr. Nwankwo attended Noir, a night club located at 425 Glenwood Avenue, Raleigh, North Carolina (the "Club" or "Noir") at the invitation of a promoter who was sponsoring an event at the Club.

16.     After going into the Club, Mr. Horton and Mr. Nwankwo sat in an outside patio area at the Club.  Mr. Horton stepped away and went to the adjoining side street, where it was quieter, to make a phone call.

17.     As Mr. Horton was making his telephone call, a security guard for the Club approached him.  The security guard stopped and apologized, telling Mr. Horton that he mistook him for someone else.  He told Mr. Horton that it was fine for him to be there, and asked him to stand on the sidewalk.

18.     Almost immediately thereafter, Detective Pike approached Mr. Horton, stepped directly in front of him in a confrontational manner and told him "you need to get out of here." Mr. Horton explained that he was a guest at the Club.  A second police officer came up to them.

4

19.     Mr. Nwankwo was on the patio at the Club and walked up to the edge of the patio, asking Detective Pike what was going on.  By this time four or five officers had arrived on the scene.

20.     Detective Pike immediately moved his attention to Mr. Nwankwo and told him to go to the entrance to the Club.  Both Mr. Nwankwo and Detective Pike and the other officers moved to the entrance.

21.     Mr. Nwankwo slowly stepped out of the building onto the sidewalk.  Detective Pike approached Mr. Nwankwo and told him to get off the sidewalk.  Mr. Nwankwo stepped off the sidewalk onto the grass and told Detective Pike that he knew his rights and could stay there.

22.     Detective Pike immediately grabbed Mr. Nwankwo by his shoulder and slammed him into a parked car.  Two officers held him against the car while Detective Pike applied disposable plastic flex cuffs to his wrists.

23.     Detective Pike charged Mr. Nwankwo with resisting a public officer in violation of N.C. Gen. Stat. § 14-223, allegedly because Mr. Nwankwo resisted arrest when Detective Pike attempted to cite him for a misdemeanor under RCC13-2031, Raleigh's pedestrian interference statute.

24.     There was no probable cause for Mr. Nwankwo's arrest, and Detective Pike knew that there was no probable cause for Mr. Nwankwo's arrest.

25.     The response of Detective Pike and the other police officers to someone who they contend was blocking the flow of pedestrian traffic was completely out of proportion to the alleged "offense," which upon information and belief was concocted by Detective Pike to provide cover for his harassment of Mr. Nwankwo and other African American male patrons.

5

26.     Detective Pike led Mr. Nwankwo into the street, where he was guarded by several other police officers.

27.     Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner.

28.     Nevertheless, Detective Pike tightened the disposable plastic flex cuffs around Mr. Nwankwo's wrist.

29.     Upon information and belief, Detective Pike violated the warnings communicated by the manufacturer of the disposable plastic flex cuffs by tightening them after they had been applied.

30.     At this point, Mr. Nwankwo was not told why Detective Pike and the other officers had chosen to arrest him, what they intended to do, or where they intended to take him.

31.     Detective Pike's disproportionate and inappropriate actions put Mr. Nwankwo in real fear that he faced the possibility of serious bodily harm, even death.

32.     Mr. Nwankwo repeated that he knew his rights and did nothing wrong. None of the officers responded to him or told him why he was being detained or what they intended to do with him.

33.     A phalanx of officers led Mr. Nwankwo toward a police van. While he was being walked down the street, Mr. Nwankwo asked "Why are you putting so much pressure on my hands? I'm walking. You're going to break my wrist." Upon information and belief, in response, officer John Doe I tightened the disposable plastic flex cuffs around Mr. Nwankwo's wrist further inflicting severe pain on Mr. Nwankwo.

34.     Upon information and belief, officer John Doe I violated the warnings communicated by the manufacturer of the disposable plastic flex cuffs by tightening them after they had been applied.

35.     Either the application of the disposable plastic flex cuff, the first tightening by Detective Pike, or the second tightening by officer John Doe I damaged the radial nerve in Mr. Nwankwo's left wrist, causing severe pain and neurological damage.

### Mr. Horton Videos the Arrest

36.     After Detective Pike and the officers moved their attention from Mr. Horton to Mr. Nwankwo, Mr. Horton walked around the building and began to record Mr. Nwankwo's arrest.

37.     Mr. Horton cautioned Mr. Nwankwo to not use profanity or engage in any misconduct.

38.     Mr. Horton followed Mr. Nwankwo and recorded the arrest on his cellular phone. "I'm right here," he told him.

39.     A police officer brushed against Mr. Horton.  "Don't try and bump into me," Mr. Horton said, "I'm not assaulting you. Don't try your tricks," Mr. Horton said.  In response, one of the officers leading Mr. Nwankwo to the police transport van yelled to one of the other officers to "10-95 him."

40.     Upon information and belief "10-95" is a code employed by officers in the Raleigh Police department meaning "subject in custody."

41.     Upon information and belief, by shouting "10-95 him" the officer was asking another officer to find some pretext to arrest Mr. Horton in order stop the videotaping of the improper arrest of Mr. Nwankwo.

7

42.     After the officer yelled "10-95 him," officer John Doe II approached Mr. Horton, forcibly handcuffed Mr. Horton's wrists behind his back, and led him toward the police van.

43.     The officers did not tell Mr. Horton why he was being detained or where he was being taken.  Their disproportionate and inappropriate actions put Mr. Horton in real fear that he faced the possibility of serious bodily harm, even death.

44.     Detective Pike issued a citation as arresting officer, charging Mr. Horton with second degree trespass, even though he was arrested while standing in the middle of a public street.

45.     Detective Pike listed two complaining witnesses: Security Officer Potter and Bartender J. Williams, whom he contends told Mr. Horton not to enter Noir or to remain there.

46.     Upon information and belief, no security officer, bartender or other person in charge at Noir ever told Mr. Horton not to enter Noir or told him not to remain there.

47.     Upon information and belief, the information entered on Mr. Horton's citation that supposedly supports his trespass charge was fabricated by Detective Pike.

48.     Detective Pike also charged Mr. Horton with resisting a public officer.  In his citation, he described Mr. Horton's videotaping of Mr. Nwankwo's arrest as "resist[ing], delay[ing] and obstruct[ing] DETECTIVE PIKE, a public officer holding the office of POLICE, by BY [*sic*] GETTING IN THE WAY OF OFFICERS WHO WERE ARRESTING ANOTHER SUBJECT."

49.     There was no probable cause for Mr. Horton's arrest, and Detective Pike and John Doe II knew that there was no probable cause for Mr. Horton's arrest.

8

### *Transport to lockup*

50.    Mr. Nwankwo and Mr. Horton were placed in the back of a transport van.  They were not secured by seatbelts, even when the van was being driven, and their hands remained restrained behind their backs.

51.    While he was sitting in the back of the parked van, Mr. Nwankwo requested several times for John Doe III, who was sitting in the front seat of the vehicle and could hear Mr. Nwankwo, to remove the disposable plastic flex cuffs from his wrists, loudly pleading: "Officer, please!  I'm begging you!  I cannot feel my hands!"  Despite his obvious pain and distress, John Doe III took no steps to loosen the disposable plastic flex cuffs securing Mr. Nwankwo's wrists.

52.    Mr. Nwankwo and Mr. Horton were transported to the Wake County Jail.  Despite welts on his wrists and his protests about pain, the disposable plastic flex cuffs were not loosened and left on Mr. Nwankwo's wrists for several hours.

### *Resolution of the Action*

53.    Mr. Nwankwo and Mr. Horton were arraigned on their respective charges.

54.    The State dismissed all charges against both Mr. Nwankwo and Mr. Horton before trial, and no court ever found that there was probable cause to bring any charges against any of them.

9

# FIRST CLAIM FOR RELIEF

## Unconstitutional False Arrest Pursuant to 42 U.S.C. § 1983
## (Detective R.J. Pike, John Doe I, John Doe II, John Doe III)

55.     Plaintiffs incorporate the preceding paragraphs by reference.

56.     Detective Pike, John Doe I, John Doe II and John Doe III acted under color of state law as police officers employed by the Raleigh Police Department in falsely arresting and detaining Plaintiffs with no basis in fact or law to do so.

57.     Detective Pike acted under color of state law when he falsified Mr. Horton's arrest report by listing complaining witnesses who neither complained about Mr. Horton's conduct nor even worked for the restaurant on whose property Mr. Horton had allegedly trespassed.

58.     In violating Plaintiffs' right to be free from false arrest, Detective Pike, John Doe I, John Doe II and John Doe III violated Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

59.     In committing the acts alleged in this Complaint, Defendants acted under color of state law to deprive Plaintiffs of certain constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution including, but not limited to, the right to be free from false arrest and the right not to be deprived of liberty without due process of law.

60.     As a direct and proximate result of the unlawful and unconstitutional conduct of Detective Pike, John Doe I, John Doe II and John Doe III, Plaintiffs suffered and continue to suffer substantial damages in an amount to be proved at trial.

61.     The actions of Detective Pike, John Doe I, John Doe II and John Doe III, as alleged in this Complaint, were intentional, malicious, willful, wanton, and/or in reckless

disregard for Plaintiffs' constitutionally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### Unconstitutional Excessive Use of Force Pursuant to 42 U.S.C. § 1983
### (Detective R.J. Pike, John Doe I, John Doe II, John Doe III)

62.     Plaintiffs incorporate the preceding paragraphs by reference.

63.     At all times relevant to this Complaint, Detective Pike, John Doe I, John Doe II and John Doe III were acting under color of state law as police officers employed by the Raleigh Police Department.

64.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Detective Pike, John Doe I, John Doe II and John Doe III were prohibited from using excessive force in their efforts to search, detain, or seize Mr. Horton and Mr. Nwankwo.

65.     The actions of Detective Pike, John Doe I, John Doe II and John Doe III, as alleged in this Complaint, constituted excessive and unlawful force in violation of Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments and under the guarantees set out in 42 U.S.C. § 1983.  Detective Pike, John Doe I, John Doe II and John Doe III took these unlawful and unconstitutional actions in connection with their arrests of Mr. Horton and Mr. Nwankwo, and these actions include, but are not limited to:

(a) Detective Pike's slamming Mr. Nwankwo into a parked car and restraining him with a disposable plastic flex cuff, when Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner;

(b) Detective Pike's subsequent additional tightening of the disposable plastic flex cuff causing severe pain and nerve damage when Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner, which upon information

11

and belief was done intentionally, maliciously, and willfully for the sole purpose of inflicting pain and harm on Mr. Nwankwo;

(c) Officer John Doe I's further additional tightening of the disposable plastic flex cuff causing severe pain and nerve damage when Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner, which upon information and belief was done intentionally, maliciously, and willfully for the sole purpose of inflicting pain and harm on Mr. Nwankwo;

(d) Officer John Doe III's subsequent refusal to remove or loosen the disposable plastic flex cuff tightened around Mr. Nwankwo's wrists even though Mr. Nwankwo was in severe pain and pleading in the back of a police van;

(e) Detective Pike and/or Officer John Doe II's restraining of Mr. Horton with handcuffs, when Mr. Horton posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner.

66.     The force used by Detective Pike, John Doe I, John Doe II and John Doe III on Plaintiffs was unreasonable, excessive, and without lawful justification or excuse.

67.     As a direct and proximate result of the unlawful and unconstitutional conduct of Detective Pike, John Doe I, John Doe II, and John Doe III, Plaintiffs suffered and continue to suffer substantial damages in an amount to be proved at trial.

68.     The actions of Detective Pike, John Doe I, John Doe II, and John Doe III were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' constitutionally protected rights, thereby entitling Plaintiffs to an award of punitive damages.

69.     Plaintiffs are further entitled to recovery of their attorneys' fees pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

### Unconstitutional Custom or Practice of Excessive Use of Force
### Pursuant to 42 U.S.C. § 1983
### (Raleigh)

70.     Plaintiffs incorporate the preceding paragraphs by reference.

71.     Under the Fourth and Fourteenth Amendments to the United States Constitution, Raleigh was prohibited from allowing its police officers to engage in a pattern, practice, policy, or custom of violating citizens' constitutional rights and was obligated to train its law enforcement officer in the proper use of force.

72.     As alleged in this Complaint, the Raleigh Police Department, and thereby Raleigh, has engaged in a pattern, practice, policy, or custom of allowing its police officers to use excessive and unlawful force in connection with their use of disposable plastic flex cuffs as a method of restraining prisoners.

73.     Upon information and belief, the Raleigh Police Department, and thereby Raleigh, was aware of the risk that use of plastic flex cuffs could cause unnecessary, excessive physical harm to persons in police custody, as evidenced by the Raleigh Police Department written policy regarding prisoners and flex cuffs, which provides:

> Flex cuffs are intended as temporary, emergency restraining devices. The officer should replace flex cuffs with alternate restraining devices as soon as practical. Care should be taken in removing the flex cuffs to avoid accidentally cutting the arrestee. Pocket-knives should not be used to remove flex cuffs.

Raleigh Police Department Policy 1108-03.

74.     Despite its awareness that routine, extended use of flex cuffs risked unnecessary, excessive physical harm to arrestees, upon information and belief, the Raleigh Police Department has condoned officers' routine practice of removing metal handcuffs from arrestees and

13

replacing them with flex cuffs for transport. Upon information and belief, this widespread, routine practice is done out of convenience so that officers can maintain possession of their metal handcuffs when arrestees are transported for detainment.

75. Upon information and belief, Raleigh police officers' practice of replacing metal handcuffs with plastic flex cuffs is so widespread that the Raleigh Police Department, and thereby Raleigh, has constructive knowledge of the practice.

76. Upon information and belief, with knowledge of the risks associated with extended use of plastic flex cuffs, Raleigh failed to correct or terminate the improper practice, which constitutes deliberate indifference to the known and obvious consequences of such extended use, including, as an example, the nerve damage suffered by Mr. Nwankwo.

77. Upon information and belief, Raleigh failed to discipline Detective Pike and the other individual Defendants for their conduct as alleged in this Complaint, further evidencing its ratification of their improper, reckless, and unlawful actions with respect to the dangerous use of plastic flex cuffs.

78. Further, the Raleigh Police Department, and thereby Raleigh, has engaged in a pattern, practice, policy, or custom of unlawfully targeting and detaining African American men who pose no threat and have engaged in no unlawful acts.

79. Upon information and belief, the Raleigh Police Department, and thereby Raleigh, was aware of the risk that racially biased policing could violate citizens' constitutional rights, as evidenced by the Raleigh Police Department written policy regarding non-biased policing, which provides that officers will use the following strategies when conduction pedestrian stops:

   a. Officers will be courteous, polite, and professional.

14

b. Officers will introduce themselves (providing name and agency affiliation) and explain to the person stopped the reason for the stop as soon as practical, unless providing this information will compromise the safety of officers or other persons.

c. Officers will ensure that the length of the detention is no longer than necessary to take appropriate action for the known or suspected offense.

Raleigh Police Department Policy 1100-04.

80.     As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by immediately grabbing Mr. Nwankwo by his shoulder when Mr. Nwankwo stepped off of the sidewalk and arresting him, all while refusing to offer any explanation for the reason for stopping Mr. Nwankwo or the reason for arresting him.

81.     As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by arresting and detaining Mr. Nwankwo when he posed no threat of harm to the officers or other persons and was not resisting arrest.

82.     As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by arresting Mr. Horton without offering any explanation of the reasons for the arrest and detaining Mr. Horton when he posed no threat of harm to the officers or other persons and was not resisting arrest.

83.     At least seven Raleigh police officers were present at the time Mr. Nwankwo and Mr. Horton were arrested, and none of them objected or intervened in response to Detective Pike's and the other individual Defendants' violations of Raleigh's policy against non-biased policing.

84.     All of the officers present acted as if the arrests of Mr. Nwankwo and Mr. Horton were typical of Raleigh police interactions with African American men, demonstrating that, despite its written policy acknowledging the risk of violating its citizens' constitutional rights, the Raleigh Police Department, and thereby Raleigh, maintains a pattern, practice, and custom of

15

unlawfully targeting and detaining African American men who pose no threat and have engaged in no unlawful acts.

85.     Raleigh's allowing its police officers to engage in a pattern, practice, policy, or custom of violating citizens' constitutional rights, including in connection with those officers' use of disposable plastic flex cuffs to restrain prisoners, was a cause of Plaintiffs' injuries.

86.     Raleigh's failure to properly train its police officers in the use of force, including in the use of disposable plastic flex cuffs, was a cause of Plaintiffs' injuries.

87.     Raleigh's allowing its police officers to engage in a pattern, practice, policy, or custom of violating citizens' constitutional rights, including in connection with those officers' unlawfully targeting and detaining African American men who pose no threat and have engaged in no unlawful acts, was a cause of Plaintiffs' injuries.

88.     In addition, in failing to discipline Detective Pike and the other individual Defendants for their conduct as alleged in this Complaint, Raleigh ratified their improper, reckless, and unlawful actions with respect to the use of force and the unlawful targeting and detention of African American men.

89.     As alleged in this Complaint, the force used by the individual Defendants on Plaintiffs was unreasonable, excessive, and without lawful justification or excuse and was in keeping with the pattern, practice, policy, or custom of the Raleigh Police Department, and thereby of Raleigh.

90.     As a direct and proximate result of Raleigh's unlawful and unconstitutional conduct, Plaintiffs suffered and continue to suffer substantial damages in an amount to be proved at trial.

16

91.     Plaintiffs are further entitled to equitable relief and to recovery of their attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF

**False Imprisonment/False Arrest**
**(All Defendants)**

92.     Plaintiffs incorporate the preceding paragraphs by reference.

93.     Detective Pike had no legal authority to issue a citation to either Plaintiff, and Detective Pike, John Doe I, John Doe II, and John Doe III, intentionally, wrongfully, and unlawfully detained and restrained Plaintiffs against their will without any basis in fact or law to do so.

94.     The intentional, wrongful, and unlawful arrest and restraint of Plaintiffs against their will caused Plaintiffs, among other things, pain, humiliation, loss of liberty, and emotional distress, and caused Mr. Nwankwo permanent physical harm.

95.     Plaintiffs have suffered damages as a direct and proximate result of the above-described false imprisonment/false arrest by Detective Pike, John Doe I, John Doe II, and John Doe III.

96.     At all times relevant to this Complaint, Detective Pike, John Doe I, John Doe II, and John Doe III were acting in the course and scope of their duties as police officers employed by the Raleigh Police Department and their actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

97.     Because the actions of Detective Pike, John Doe I, John Doe II and John Doe III were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' rights and safety, Plaintiffs are entitled to an award of punitive damages against Detective Pike, John Doe I, John Doe II, and John Doe III individually.

## FIFTH CLAIM FOR RELIEF

### Malicious Prosecution
### (Raleigh and Detective Pike)

98.     Plaintiffs incorporate the preceding paragraphs by reference.

99.     Detective Pike maliciously and without probable cause caused a criminal proceeding to be commenced against each of the Plaintiffs.

100.    The criminal proceeding against each of the Plaintiffs was terminated in favor of Plaintiffs.

101.    The institution of the criminal proceedings against Plaintiffs by Detective Pike, caused Plaintiffs, among other things, humiliation, loss of liberty, and emotional distress.

102.    Plaintiffs have suffered damages as a direct and proximate result of the above-described malicious prosecution by Detective Pike.

103.    At all times relevant to this Complaint, Detective Pike was acting in the course and scope of his duties as a police officer employed by the Raleigh Police Department and his actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

104.    Because Detective Pike's actions were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' rights and safety, Plaintiffs are entitled to an award of punitive damages against Detective Pike individually.


## SIXTH CLAIM FOR RELIEF

### Abuse of Process
### (Raleigh and Detective Pike)

105.    Plaintiffs incorporate the preceding paragraphs by reference.

18

106.    Detective Pike maliciously and without probable cause caused a criminal proceeding to be commenced against each of the Plaintiffs.

107.    The criminal proceeding against each Plaintiff was terminated in favor of Plaintiffs.

108.    The institution of the criminal proceedings against Plaintiffs by Detective Pike, caused Plaintiffs, among other things, humiliation, loss of liberty and emotional distress.

109.    Plaintiffs have suffered damages as a direct and proximate result of the above-described malicious prosecution by Detective Pike.

110.    At all times relevant to this Complaint, Detective Pike was acting in the course and scope of his duties as a police officer employed by the Raleigh Police Department and his actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

111.    Because Detective Pike's actions were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' rights and safety, Plaintiffs are entitled to an award of punitive damages against Detective Pike individually.

## SEVENTH CLAIM FOR RELIEF

### Battery
### (All Defendants)

112.    Plaintiffs incorporate the preceding paragraphs by reference

113.    The actions of the Detective Pike, John Doe I, and John Doe II by causing the willful touching and willfully touching the person of Plaintiffs without their consent for the purpose of restraining their person and liberty by placing them under unlawful arrest, retraining them with disposable plastic flex cuffs in public, constituted an unlawful battery against Plaintiffs. This battery subjected Plaintiffs to both physical and mental pain, suffering and

19

anguish, and extreme embarrassment and humiliation, with physical pain coming from the placing of disposable plastic flex cuffs on the Plaintiffs in such tightness as to torture the Plaintiffs through the tightness of the disposable plastic flex cuffs, and, in the case of Mr. Nwankwo, causing severe nerve damage.

114.    The conduct of Detective Pike and John Doe I in tightening the disposable plastic flex cuffs binding Mr. Nwankwo's wrist so tightly as to severely damage a nerve when Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner was intentional or, in the alternative, constituted grossly and culpably negligent conduct committed with a wanton and reckless disregard for the rights and safety of Mr. Nwankwo, and their conduct was taken with the knowledge and belief that injuries to Mr. Nwankwo were substantially certain to follow from their conduct.

115.    As a direct and proximate result of the unlawful conduct of Detective Pike, John Doe I, John Doe II and John Doe III, Plaintiffs suffered and continues to suffer substantial in an amount to be proved at trial.

116.    At all times relevant to this Complaint, Detective Pike, John Doe I, John Doe II, and John Doe III were acting in the course and scope of their duties as police officers employed by the Raleigh Police Department and their actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

117.    Because the actions of Detective Pike, John Doe I, John Doe II and John Doe III actions were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' rights and safety, Plaintiffs are entitled to an award of punitive damages against Detective Pike, John Doe I, John Doe II and John Doe III individually.

**EIGHTH CLAIM FOR RELIEF**

## Assault
### (All Defendants)

118.     Plaintiffs incorporate the preceding paragraphs by reference.

119.     The actions of Detective Pike, John Doe I, John Doe II, and John Doe III, including but not limited to the placing of disposable plastic flex cuffs on Mr. Nwankwo's wrist that were tight enough to severely damage a nerve, repeatedly tightening the disposable plastic flex cuff and refusing to loosen it, and striking Mr. Horton in the face to knock his phone to the ground placed Plaintiffs in reasonable fear of immediate contact and which were without Plaintiffs' consent or lawful privilege, constitute an assault upon Plaintiffs in violation of North Carolina law.

120.     The conduct of Detective Pike, John Doe I, John Doe II and John Doe III was intentional or, in the alternative, constituted grossly and culpably negligent conduct committed with a wanton and reckless disregard for the rights and safety of Plaintiffs, and their conduct was taken with the knowledge and belief that injuries to Plaintiffs were substantially certain to follow from their conduct.

121.      As a direct and proximate result of the unlawful conduct of Detective Pike, John Doe I, John Doe II and John Doe III, Plaintiffs have suffered and continue to suffer substantial damages in an amount to be proved at trial.

122.     At all times relevant to this Complaint, Detective Pike, John Doe I, John Doe II, and John Doe III were acting in the course and scope of their duties as police officers employed by the Raleigh Police Department and their actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

123.     Because the actions of Detective Pike, John Doe I, John Doe II, and John Doe III were intentional, malicious, willful, wanton, and/or in reckless disregard for Plaintiffs' rights and

21

safety, Plaintiffs are entitled to an award of punitive damages against Detective Pike, John Doe I, John Doe II, and John Doe III individually.

## NINTH CLAIM FOR RELIEF

### Negligence
### (Raleigh)

124.    Plaintiffs incorporate the preceding paragraphs by reference.

125.    Raleigh owed Plaintiffs the duty to properly and adequately supervise and train all police officers employed by the Raleigh Police Department in the use of force and in the use of disposable plastic flex cuffs to restrain prisoners.

126.    Raleigh owed Plaintiffs the duty to properly and adequately supervise and train all police officers employed by the Raleigh Police Department in non-biased policing that does not unlawfully target African American men who pose no threat and have engaged in no unlawful acts.

127.    As alleged in this Complaint, the Raleigh Police Department, and thereby Raleigh, has failed to adequately supervise and train its police officers regarding the use excessive and unlawful force in connection with their use of disposable plastic flex cuffs as a method of restraining prisoners.

128.    Upon information and belief, the Raleigh Police Department, and thereby Raleigh, was aware of the risk that use of plastic flex cuffs could cause unnecessary, excessive physical harm to persons in police custody, as evidenced by the Raleigh Police Department written policy regarding prisoners and restraints, which provides:

> Flex cuffs are intended as temporary, emergency restraining devices. The officer should replace flex cuffs with alternate restraining devices as soon as practical. Care should be taken in removing the flex cuffs to avoid accidentally cutting the arrestee. Pocket-knives should not be used to remove flex cuffs.

22

Raleigh Police Department Policy 1108-03.

129. Despite its awareness that routine, extended use of flex cuffs risked unnecessary, excessive physical harm to arrestees, upon information and belief, the Raleigh Police Department has condoned and failed to correct officers' routine practice of removing metal handcuffs from arrestees and replacing them with flex cuffs for transport. Upon information and belief, this widespread, routine practice is done out of convenience so that officers can maintain possession of their metal handcuffs when arrestees are transported for detainment.

130. Upon information and belief, Raleigh police officers' practice of replacing metal handcuffs with plastic flex cuffs is so widespread that the Raleigh Police Department, and thereby Raleigh, has constructive knowledge of the practice.

131. Upon information and belief, with knowledge of the risks associated with extended use of plastic flex cuffs, Raleigh failed to correct or terminate the improper practice, which constitutes deliberate indifference to the known and obvious consequences of such extended use, including, as an example, the nerve damage suffered by Mr. Nwankwo.

132. Upon information and belief, Raleigh failed to discipline Detective Pike and the other individual Defendants for their conduct as alleged in this Complaint, further evidencing its ratification of and failure to correct their improper, reckless, and unlawful actions with respect to the dangerous use of plastic flex cuffs.

133. Further, the Raleigh Police Department, and thereby Raleigh, has failed to adequately supervise and train its police officers regarding unlawfully targeting and detaining African American men who pose no threat and have engaged in no unlawful acts.

134. Upon information and belief, the Raleigh Police Department, and thereby Raleigh, was aware of the risk that racially biased policing could violate citizens' constitutional

23

rights, as evidenced by the Raleigh Police Department written policy regarding non-biased policing, which provides that officers will use the following strategies when conduction pedestrian stops:

   a. Officers will be courteous, polite, and professional.

   b. Officers will introduce themselves (providing name and agency affiliation) and explain to the person stopped the reason for the stop as soon as practical, unless providing this information will compromise the safety of officers or other persons.

   c. Officers will ensure that the length of the detention is no longer than necessary to take appropriate action for the known or suspected offense.

Raleigh Police Department Policy 1100-04.

135.    As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by immediately grabbing Mr. Nwankwo by his shoulder when Mr. Nwankwo stepped off of the sidewalk and arresting him, all while refusing to offer any explanation for the reason for stopping Mr. Nwankwo or the reason for arresting him.

136.    As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by arresting and detaining Mr. Nwankwo when he posed no threat of harm to the officers or other persons and was not resisting arrest.

137.    As alleged in this Complaint, Detective Pike and the other individual Defendants violated the policy against non-biased policing by arresting Mr. Horton without offering any explanation of the reasons for the arrest and detaining Mr. Horton when he posed no threat of harm to the officers or other persons and was not resisting arrest.

138.    At least seven Raleigh police officers were present at the time Mr. Nwankwo and Mr. Horton were arrested, and none of them objected or intervened in response to Detective Pike's and the other individual Defendants' violations of Raleigh's policy against non-biased policing.

24

139.    All of the officers present acted as if the arrests of Mr. Nwankwo and Mr. Horton were typical of Raleigh police interactions with African American men, demonstrating that, despite its written policy acknowledging the risk of violating its citizens' constitutional rights, the Raleigh Police Department, and thereby Raleigh, has failed to adequately train its officers regarding their unlawful targeting and detaining African American men who pose no threat and have engaged in no unlawful acts.

140.    Raleigh's failure to adequately supervise and train its officers in connection with those officers' use of disposable plastic flex cuffs to restrain prisoners, was a cause of Plaintiffs' injuries.

141.    Raleigh's failure to adequately supervise and train its officers in connection with those officers' unlawfully targeting and detaining African American men who pose no threat and have engaged in no unlawful acts, was a cause of Plaintiffs' injuries.

142.    In addition, in failing to discipline Detective Pike and the other individual Defendants for their conduct as alleged in this Complaint, Raleigh ratified and failed to correct their improper, reckless, and unlawful actions with respect to the use of force and the unlawful targeting and detention of African American men.

143.    As a direct and proximate result of Raleigh's negligence, Plaintiffs suffered and continue to suffer substantial damages in an amount to be proved at trial.

## TENTH CLAIM FOR RELIEF

### Gross Negligence
### (All Defendants)

144.    Plaintiffs incorporate the preceding paragraphs by reference.

145.     The conduct of Detective Pike, John Doe I, John Doe II, and John Doe III was purposeful and was with the knowledge that it constituted a breach of their duty to observe and honor the rights and safety of others.

146.     The actions of Detective Pike, John Doe I, John Doe II and John Doe III were done needlessly, manifesting a conscious and reckless disregard of and indifference to the rights and safety of others.

147.     The conduct of Detective Pike, John Doe I, John Doe II, and John Doe III constituted gross negligence in the performance of the duties owed to Plaintiffs as police officers employed by the Raleigh Police Department.

148.     As a direct and proximate result of the gross negligence of Detective Pike, John Doe I, John Doe II, and John Doe III Plaintiffs suffered and continue to suffer substantial damages in an amount to be proved at trial.

149.     At all times relevant to this Complaint, Detective Pike, John Doe I, John Doe II and John Doe III were acting in the course and scope of their duties as police officers employed by the Raleigh Police Department and their actions and unlawful conduct are therefore imputed to Raleigh under the doctrine of *respondeat superior*.

**DEFENDANT CITY OF RALEIGH HAS WAIVED ITS SOVEREIGN IMMUNITY**

150.     Plaintiffs incorporate the preceding paragraphs by reference.

151.     Raleigh is liable for the conduct of Detective Pike, John Doe I, John Doe II and all other police officers while they are acting in the scope of employment and in the furtherance of Raleigh's business.

152.     Raleigh is liable for the torts committed by Detective Pike, John Doe I, John Doe II, and John Doe III and by other individual officers of the Raleigh Police Department.

153.    Upon information and belief, at all relevant times Detective Pike, John Doe I, John Doe II, John Doe III and the other individual officers of the Raleigh Police Department whose actions are complained of were in uniform, on duty, and were acting within the scope of their employment and  in furtherance of the business of Raleigh.

154.    Upon information and belief Raleigh has waived its sovereign immunity pursuant to N.C. Gen. Stat. Section 160A-485.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs ask this Court to:

1. Award compensatory damages to Mr. Horton and Mr. Nwankwo in an amount to be proven at trial;

2. Award punitive damages to Mr. Horton and Mr. Nwankwo;

3. Award Plaintiffs an injunction:

   (a) prohibiting Raleigh, its successors, assigns, those persons in active concert or participation with Raleigh, and all other persons within the scope of Federal Rule of Civil Procedure 65, from continuing to engage in a pattern or practice of condoning the improper use of disposable plastic flex cuffs by its officers to restrain prisoners in a manner that constitutes excessive force;

   (b) mandating that Raleigh, its successors, assigns, those persons in active concert or participation with Raleigh, and all other persons within the scope of Federal Rule of Civil Procedure 65, implement training sufficient to ensure that its law enforcement officers will avoid

27

employing disposable plastic flex cuffs in such a way that that use
would constitute excessive force; and

(c) mandating that Raleigh, its successors, assigns, those persons in active
concert or participation with Raleigh, and all other persons within the
scope of Federal Rule of Civil Procedure 65, implement anti-bias
diversity training and conflict de-escalation training designed to ensure
fairness, eliminate bias, and build community engagement by its law
enforcement officers as it relates to the minorities whom they are
sworn to protect and serve.

4. Tax the costs of this action against Defendants and award Plaintiffs their reasonable
attorneys' fees as permitted by statute; and

5. Grant to Plaintiffs such other and further relief as the Court may deem just and
proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated: October 19, 2015

PARRY TYNDALL WHITE

/s/ James C. White
James C. White, N.C. Bar # 31859
Michelle M. Walker, N.C. Bar # 41664
100 Europa Drive, Suite 401
Chapel Hill, NC 27517
jwhite@ptwfirm.com
(919) 246-4676
(919) 246-9113 fax

*Attorneys for Plaintiffs Isaac Brennan Horton, IV
and Omeze Nwankwo*

29

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing **First Amended Complaint** using the CM/ECF system, which will send electronic notification of such filing to the following:

Hunt K. Choi, Esq.
Deputy City Attorney
City of Raleigh
Post Office Box 590
Raleigh, NC 27602
Email: hunt.choi@ci.raleigh.nc.us
*Attorneys for City of Raleigh*

Patricia L. Holland, Esq.
Jackson Lewis, LLP
1400 Crescent Green Drive, Suite 215
Cary, NC 27518
Email: patricia.holland@jacksonlewis.com
Counsel for Defendant R.J. Pike

Dated:  October 19, 2015

PARRY TYNDALL WHITE

/s/ James C. White
James C. White, N.C. Bar # 31859
Michelle M. Walker, N.C. Bar # 41664
100 Europa Drive, Suite 401
Chapel Hill, NC 27517
jwhite@ptwfirm.com
(919) 246-4676
(919) 246-9113 fax

*Attorneys for Plaintiffs Isaac Brennan Horton, IV and Omeze Nwankwo*