IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-349-FL

| | |
|---|---|
| ISAAC BRENNAN HORTON, IV; OMEZE NWANKWO, ) ) ) Plaintiffs, ) ) v. ) ) CITY OF RALEIGH; R.J. PIKE; and JOHN DOE, I, JOHN DOE, II; and JOHN DOE, III; ) ) ) ) Defendants. ) | ORDER |

This matter is before the court on motion to dismiss for failure to state a claim (DE 24), filed by defendants City of Raleigh (the "City"), R.J. Pike in his official capacity, and John Does in their official capacity. Plaintiffs have responded in opposition. In this posture, the issues raised are ripe for ruling. For the following reasons, the court grants the motion.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on July 22, 2015 claiming damages under 42 U.S.C. § 1983 and state tort theories of relief arising out of an incident which occurred on July 11, 2014. Plaintiffs assert claims against the City and the individual defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983, as well as common law claims for assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, negligence, and gross negligence. Plaintiffs filed an amended complaint on October 19, 2015.

The City and the individual defendants in their official capacities filed the instant motion on November 2, 2015, seeking dismissal of plaintiffs' third and ninth claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded in opposition on November 24, 2015.

The court entered a case management order on November 3, 2015, setting a deadline for discovery completion of July 1, 2016, and dispositive motions by August 1, 2016.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. On the evening of July 11, 2014, plaintiffs Isaac Brennan Horton IV ("Mr. Horton") and Omeze Nwankwo ("Mr. Nwankwo") attended Noir ("Noir" or the "Club"), a night club located at 425 Glenwood Avenue, Raleigh, North Carolina. After going into the Club, Mr. Horton and Mr. Nwankwo sat in an outside patio area at the Club. Mr. Horton stepped away and went to the adjoining side street, where it was quieter, to make a phone call. As Mr. Horton was making his telephone call, a security guard for the Club approached him. The security guard stopped and apologized, telling Mr. Horton that he mistook him for someone else. He told Mr. Horton that it was fine for him to be there, and asked him to stand on the sidewalk.

Almost immediately thereafter, plaintiff R.J. Pike, a Raleigh police detective ("Detective Pike") approached Mr. Horton, stepped directly in front of him in a confrontational manner and told him "you need to get out of here." Mr. Horton explained that he was a guest at the Club. A second police officer came up to them. Mr. Nwankwo was on the patio at the Club and walked up to the edge of the patio, asking Detective Pike what was going on. By this time four or five officers had arrived on the scene.

Detective Pike immediately moved his attention to Mr. Nwankwo and told him to go to the entrance to the Club. Both Mr. Nwankwo and Detective Pike and the other officers moved to the entrance. Mr. Nwankwo slowly stepped out of the building onto the sidewalk. Detective Pike approached Mr. Nwankwo and told him to get off the sidewalk. Mr. Nwankwo stepped off the sidewalk onto the grass and told Detective Pike that he knew his rights and could stay there. Detective Pike immediately grabbed Mr. Nwankwo by his shoulder and slammed him into a parked car. Two officers held him against the car while Detective Pike applied disposable plastic "flex" handcuffs, (hereinafter "plastic flex cuffs"), to his wrists.

Detective Pike charged Mr. Nwankwo with resisting a public officer in violation of N.C. Gen. Stat. § 14-223, allegedly because Mr. Nwankwo resisted arrest when Detective Pike attempted to cite him for a misdemeanor under RCC13-2031, the City's pedestrian interference statute. Detective Pike charged Mr. Nwankwo to provide cover for his harassment of Mr. Nwankwo and other African American male patrons.

Detective Pike led Mr. Nwankwo into the street, where he was guarded by several other police officers. Mr. Nwankwo posed no threat and was not resisting arrest or otherwise acting in a non-compliant manner. Nevertheless, Detective Pike tightened the plastic flex cuffs around Mr. Nwankwo's wrist, even though the manufacturer of the plastic flex cuffs communicated warnings against doing so. At this point, Mr. Nwankwo was not told why Detective Pike and the other officers had chosen to arrest him, what they intended to do, or where they intended to take him. Detective Pike's actions put Mr. Nwankwo in real fear that he faced the possibility of serious bodily harm, even death.

Mr. Nwankwo repeated that he knew his rights and did nothing wrong. None of the officers responded to him or told him why he was being detained or what they intended to do with him. A phalanx of officers led Mr. Nwankwo toward a police van. While he was being walked down the street, Mr. Nwankwo asked "Why are you putting so much pressure on my hands? I'm walking. You're going to break my wrist." In response, officer John Doe I tightened the plastic flex cuffs around Mr. Nwankwo's wrist further inflicting severe pain on Mr. Nwankwo, even though the manufacturer of the plastic flex cuffs communicated warnings against doing so. Either the application of the plastic flex cuff, the first tightening by Detective Pike, or the second tightening by officer John Doe I, damaged the radial nerve in Mr. Nwankwo's left wrist, causing severe pain and neurological damage.

In the meantime, after Detective Pike and the officers moved their attention from Mr. Horton to Mr. Nwankwo, Mr. Horton walked around the building and began to record Mr. Nwankwo's arrest. Mr. Horton followed Mr. Nwankwo and recorded the arrest on his cellular phone. "I'm right here," he told him. A police officer brushed against Mr. Horton. "Don't try and bump into me," Mr. Horton said, "I'm not assaulting you. Don't try your tricks," Mr. Horton said. In response, one of the officers leading Mr. Nwankwo to the police transport van yelled to one of the other officers to "10-95 him." "10-95" is a code employed by officers in the Raleigh police department meaning "subject in custody." By shouting "10-95 him" the officer was asking another officer to find some pretext to arrest Mr. Horton in order stop the videotaping of the improper arrest of Mr. Nwankwo.

After the officer yelled "10-95 him," officer John Doe II approached Mr. Horton, forcibly handcuffed Mr. Horton's wrists behind his back, and led him toward the police van. The officers did not tell Mr. Horton why he was being detained or where he was being taken, and these actions

4

put Mr. Horton in real fear that he faced the possibility of serious bodily harm, even death. Detective Pike issued a citation as arresting officer, charging Mr. Horton with second degree trespass, even though he was arrested while standing in the middle of a public street. Detective Pike listed two complaining witnesses: "Security Officer Potter" and "Bartender J. Williams," whom he contends told Mr. Horton not to enter Noir or to remain there. However, no security officer, bartender, or other person in charge at Noir, ever told Mr. Horton not to enter Noir or told him not to remain there.

The information entered on Mr. Horton's citation that supposedly supports his trespass charge was fabricated by Detective Pike. Detective Pike also charged Mr. Horton with resisting a public officer. In his citation, he described Mr. Horton's videotaping of Mr. Nwankwo's arrest as "resist[ing], delay[ing] and obstruct[ing] DETECTIVE PIKE, a public officer holding the office of POLICE, by BY [sic] GETTING IN THE WAY OF OFFICERS WHO WERE ARRESTING ANOTHER SUBJECT."

Mr. Nwankwo and Mr. Horton were placed in the back of a transport van. They were not secured by seatbelts, even when the van was being driven, and their hands remained restrained behind their backs. While he was sitting in the back of the parked van, Mr. Nwankwo requested several times for John Doe III, who was sitting in the front seat of the vehicle and could hear Mr. Nwankwo, to remove the plastic flex cuffs from his wrists, loudly pleading: "Officer, please! I'm begging you! I cannot feel my hands!" Despite his obvious pain and distress, John Doe III took no steps to loosen the plastic flex cuffs securing Mr. Nwankwo's wrists. Mr. Nwankwo and Mr. Horton were transported to the Wake County Jail. Despite welts on his wrists and his protests about pain, the plastic flex cuffs were not loosened and left on Mr. Nwankwo's wrists for several hours.

5

Mr. Nwankwo and Mr. Horton were arraigned on their respective charges. The State dismissed all charges against both Mr. Nwankwo and Mr. Horton before trial.

**DISCUSSION**

A.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.   Third Claim – Custom or Practice

In their third claim, plaintiffs contend that the City engaged in an unconstitutional custom or practice of excessive use of force, pursuant to 42 U.S.C. § 1983.[1]  In its motion to dismiss, the City argues that plaintiffs have failed to allege sufficient facts to support such claim.  The court agrees.

"[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir. 2013) (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)); see Walker v. Prince George's Cty., MD, 575 F.3d 426, 431 (4th Cir. 2009) ("[A] municipality's liability arises only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom.") (internal quotations omitted).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)).  "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of

---

[1] While plaintiffs named the individual defendants in their official capacities as defendants in the complaint, plaintiffs confirm in response to the instant motion that they no longer assert claims against the individual defendants in their official capacity.  Thus, claims against those defendants in their official capacity are dismissed with prejudice.

7

Goldsboro, 178 F.3d 231, 244-45 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)). In addition, municipal policy may include "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011)

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Plaintiffs assert three grounds for their claim against the City for unconstitutional custom or practice: 1) misuse of plastic flex cuffs, 2) failing to train properly officers in the use of plastic flex cuffs, and 3) detaining African American men who pose no threat and engaged in no unlawful acts. The court will address each in turn.

      a.      Misuse of Plastic Flex Cuffs

Plaintiffs contend that the City has engaged in a custom or practice of allowing its police officers to use excessive force with plastic flex cuffs. Plaintiffs, however, do not allege facts permitting an inference that the City maintained an unconstitutional policy regarding use of plastic flex cuffs. Indeed, the only City policy cited by plaintiffs is Raleigh Police Department Policy 1108-03, which directs police officers to minimize use of plastic flex cuffs and to take care in removing them:

> Flex cuffs are intended as temporary, emergency restraining devices. The officer should replace flex cuffs with alternate restraining devices as soon as practical. Care

> should be taken in removing the flex cuffs to avoid accidentally cutting the arrestee. Pocket-knives should not be used to remove flex cuffs.

(Am. Compl. ¶ 73 (quoting Raleigh Police Department Policy 1108-03)).

Plaintiffs do not contend that this policy is, in itself, unconstitutional. Plaintiff's suggest rather that, contrary to this stated policy, police officers engaged in a repeated practice of "replacing metal handcuffs with plastic flex cuffs" and "extended use" of plastic flex cuffs. (Am. Compl. ¶ 75-76). Plaintiffs, however, only allege facts of a single incident of such conduct, the alleged misuse of plastic flex cuffs on Mr. Nwankwo. (See Am. Compl. ¶¶ 22, 28, 33-35, 50-52, 65). Without more, this is not enough to state a claim for municipal liability on the basis of a custom or practice of unconstitutional behavior. See Connick, 563 U.S. at 61; Tuttle, 471 U.S. at 824; Walker, 575 F.3d at 431; see also Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1329 (11th Cir. 2015) (affirming dismissal of Monell claim "aris[ing] from a single incident and the actions of two deputies").

Plaintiffs argue that they are not required to allege multiple instances of misuse of plastic flex cuffs in order to state a claim of municipal liability, citing this court's opinion in Price v. City of Fayetteville, 22 F. Supp. 3d 551, 562-64 (E.D.N.C. 2014). Price, however, is distinguishable. There, the plaintiffs alleged that their injury was caused by an existing unconstitutional municipal policy, where an arresting officer admitted that "the police were enforcing the policy of Dogwood Festival, Inc. that bans literature distribution within festival confines," a policy that violated the plaintiffs' first amendment rights. 22 F. Supp. 3d at 562-63. Thus, Price involved enforcement of "an existing, unconstitutional municipal policy," which does not require more than a single incident of unconstitutional activity. See Tuttle, 471 U.S. at 823-24. The instant complaint does not include comparable allegations.

9

Plaintiffs also cite Price for the proposition that a plaintiff is not required to allege multiple instances of constitutional violations to state a claim of municipal liability. See 22 F. Supp. 3d at 563-64 (stating "there is no requirement that plaintiffs plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom") (quoting Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)). As an initial matter, this statement in Price was not necessary to the court's holding based on enforcement of an unconstitutional municipal policy, as set forth above. See Price, 22 F.Supp.3d at 564 ("[P]laintiffs do not merely allege existence of a municipal policy on the basis of a single incident of misconduct.").

However, to the extent Price suggests that a plaintiff need not plead multiple instances of misconduct to show a custom or practice of violations, the court declines to follow Price. In Price, the court quoted the pleading standard set forth by the Fourth Circuit in Jordan,15 F.3d at 338. Jordan, however, is in conflict with Iqbal, 556 U.S. at 678, and Walker, 575 F.3d at 431. Under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotations omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and more than just "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." Id.

Thus, merely asserting that a custom or practice of misconduct exists thus is not sufficient to state a claim for municipal liability after Iqbal. To meet this standard, plaintiffs must allege some factual content permitting a reasonable inference of multiple incidents of prior violations. See Walker, 575 F.3d at 431; Weiland, 792 F.3d at 1329; Plaintiffs have not done so here.

b. Failure to Train

In support of their third claim of relief, plaintiffs assert that the City's "failure to properly train its police officers in the use of force, including in the use of plastic flex cuffs, was a cause of Plaintiffs' injuries." (Am. Compl. ¶86). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 563 U.S. at 61. "[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62.

Here, plaintiffs do not contend they have alleged a pattern of similar constitutional violations by untrained employees with regard to use of plastic flex cuffs. Rather, plaintiffs suggest that the existence of Raleigh Police Department Policy 1108-03 shows that the City was on notice of misuse of plastic flex cuffs. The existence of such a police department policy, however, provides no "more than a sheer possibility that a defendant has acted unlawfully" in the past. Iqbal, 556 U.S. at 678. While the policy may have been created in response to past misconduct, it also may have been created proactively to avoid future misconduct. Plaintiffs must allege "more by way of factual content to nudge [their] claim . . . across the line from conceivable to plausible." Id. at 683.

Thus, plaintiffs have failed to state a claim under § 1983 on the basis of failure to train defendants.

Case 5:15-cv-00349-FL   Document 29   Filed 05/18/16   Page 11 of 15

c. Targeting African American Men

Plaintiffs contend that the City has engaged in a custom or practice of "targeting and detaining African American men who pose no threat and have engaged in no unlawful acts." (Am. Compl. 78). Plaintiffs have not alleged, however, multiple incidents of misconduct permitting an inference of a custom or practice of such targeting or detaining.

Plaintiffs suggest that they have alleged repeated incidents of misconduct because the practice of targeting and detaining African American men was repeated in the arrests of both plaintiffs in the instant case. However, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." Connick, 563 U.S. at 63 n.7; see Weiland, 792 F.3d at 1329 (affirming dismissal of Monell claim "aris[ing] from a single incident and the actions of two deputies"); Walker, 575 F.3d at 431(rejecting argument that a single officer's alleged "common practice" of unconstitutional action "implemented an official government policy or custom"). Therefore, the two arrests in the instant case cannot themselves constitute multiple incidents of misconduct necessary to state a claim for municipal liability in this case.

Plaintiffs also point out that at least seven police officers were present at the time plaintiffs were arrested, and none of them objected or intervened to the defendant officers' asserted constitutional violations. Plaintiffs contend that they have shown an unlawful custom or practice because all the police officers present "acted as if the arrests of [plaintiffs] were typical of Raleigh police interactions with African American men." (Am. Compl. ¶84). As an initial matter, this contention is a "naked assertion[] devoid of further factual enhancement" that begs the question in what way the officers acted as if the arrests were typical. Iqbal, 556 U.S. at 679. To the extent

12

plaintiffs rely upon the failure of other officers to intervene in the arrests in the instant case, this failure here does not provide factual material necessary to draw an inference of prior repeated incidents of misconduct.

Plaintiffs argue that the existence of Raleigh Police Department Policy 1100-04 regarding protocol for pedestrian stops further supports their claim. As with the policy regarding use of flex cuffs, however, this policy is not itself unconstitutional. Indeed, policy 1100-04 directs officers to "be courteous, polite, and professional," to "explain to the person stopped the reason for the stop as soon as practical," and to "ensure that the length of the detention is no longer than necessary." (Am. Compl. ¶ 79). Thus, where the policy itself is not unconstitutional, and where plaintiffs have not alleged multiple incidents of prior violations of this policy by officers, the alleged violation of this policy in this instance, without more, are insufficient to state a claim. See Connick, 563 U.S. at 61; Tuttle, 471 U.S. at 824; Walker, 575 F.3d at 431.

In sum, plaintiffs have failed to state a claim against the City for engaging in an unconstitutional custom or practice of excessive use of force, pursuant to 42 U.S.C. § 1983.

2. Ninth Claim – Negligence

In their ninth claim, plaintiffs contend that the City was negligent in failing to adequately train, supervise, and discipline, the individual defendants in their use of force and targeting and detention of African American men.

North Carolina law recognizes a claim for negligent training, supervision, and retention, based on the following elements:

> (1) the specific negligent act on which the action is founded [;] (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts

13

had he used ordinary care in oversight and supervision; and (4) that the injury complained of resulted from the incompetency proved.

Medlin v. Bass, 327 N.C. 587, 591 (1990) (quoting Walters v. Lumber Co., 163 N.C. 536, 541 (1913)). Generally, to state such a claim, a "plaintiff must show employer's hiring or retention after actual or constructive knowledge of employee's incompetence." Id. (citing Pleasants v. Barnes, 221 N.C. 173 (1942)).

The North Carolina Supreme Court has described limited circumstances in which these elements have been met. The court has noted applicability of such a claim, for example, where an employer "retain[ed] as a supervisor an individual widely known to be surly, violent, and ill-tempered toward children," and in another case where a "manager had been repeatedly informed by plaintiff" of repeated sexual harassment by a coworker and "failed to intercede." Braswell v. Braswell, 330 N.C. 363, 373 (1991) (citing Lamb v. Littman, 128 N.C. 361 (1901) and Hogan v. Forsyth Country Club, 79 N.C.App. 483 (1986)).

Here, plaintiffs have failed to allege facts permitting an inference that the City had actual or constructive knowledge of police officer incompetence. Plaintiffs have not alleged that any of the defendant police officers had misused plastic flex cuffs or targeted African American men in the past, and that such misconduct was known or should have been known to the City. Plaintiffs suggest that the existence of police department policies regarding use of flex cuffs and protocol for pedestrian encounters tends to show that the City knew or should have known of past misconduct by officers. As noted above, however, the existence of such police department policies provides no "more than a sheer possibility that a defendant has acted unlawfully" in the past. Iqbal, 556 U.S. at 678. Plaintiffs have alleged no facts permitting an inference that the City was on notice, or should have been on notice, that defendants had engaged in misconduct in the past.

14

In sum, plaintiffs have failed to state a claim of negligent training, supervision, and retention, by the City.

## CONCLUSION

Based on the foregoing, the court GRANTS the motion to dismiss (DE 24), filed by defendants City of Raleigh, R.J. Pike in his official capacity, and John Does in their official capacity. Plaintiffs' claims against the City of Raleigh are DISMISSED WITHOUT PREJUDICE. Plaintiffs' claims against R.J. Pike in his official capacity, and John Does in their official capacity, are DISMISSED WITH PREJUDICE.

SO ORDERED, this the 18th day of May, 2016.

LOUISE W. FLANAGAN
United States District Judge